1 | HANSON BRIDGETT LLP
ANDREW G. GIACOMINI, SBN 154377
2 | agiacomini@hansonbridgett.com
JOHN T. CU, SBN 207402
3 | jcu@hansonbridgett.com
425 Market Street, 26th Floor
4 | San Francisco, California 94105
Telephone:   (415) 777-3200
5 | Facsimile:   (415) 541-9366

6 | Attorneys for Plaintiffs Lidia Rivera, et al.

7 | (Additional Counsel Listed on Signature Page)

8 |

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| LIDIA RIVERA, EVERARDO RIVERA, ENRIQUE MOLINA, ALAN WILLSMORE and SHELLEY WILLSMORE, as Trustees for the Willsmore Trust, KENNETH R. HANSEN, as Trustee for the Hansen Family Trust, CONNIE SANCHEZ and DAVID SANCHEZ, as Trustees for the Sanchez Family Trust 11-11-11, RAVINDER S. THIARA and SUREENA THIARA, and MARY CRUZ, on behalf of themselves and all others similarly situated,<br><br>            Plaintiffs,<br><br>            v.<br><br>UNION PACIFIC RAILROAD COMPANY; SFPP, L.P. (formerly known as SANTA FE PACIFIC PIPELINES, INC.); KINDER MORGAN OPERATING L.P. "D", and KINDER MORGAN G.P., INC.,<br><br>            Defendants. | <u>CLASS ACTION</u><br><br>CASE NO.   2:15-cv-6511<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## <u>COMPLAINT</u>

Plaintiffs Lidia Rivera, Everardo Rivera, Enrique Molina, Alan Willsmore, Shelley Willsmore, Kenneth R. Hansen, Connie Sanchez, David Sanchez, Ravinder S. Thiara, Sureena Thiara, and Mary Cruz for themselves and on behalf of a class of similarly

11492132.1

situated landowners, pursuant to Rule 23 of the Federal Rules of Civil Procedure, allege as follows:

### PARTIES

1.     Plaintiffs Lidia Rivera and Everardo Rivera are individual residents and citizens of the State of California, and are fee owners of a parcel of land located in San Bernardino County, California, assessor parcel number 0163011300000, with the legal description set forth in Exhibit 1 hereto.

2.     Plaintiff Enrique Molina is an individual resident and citizen of the State of California, and is fee owner of a parcel of land located in San Bernardino County, California, assessor parcel number 0163011160000, with the legal description set forth in Exhibit 2 hereto.

3.     Plaintiffs Alan and Shelley Willsmore are individual residents and citizens of the State of California, and are trustees for the Willsmore Trust, the fee owner of a parcel of land located in Placer County, California, assessor parcel number 063030047000, with the legal description set forth in Exhibit 3 hereto.

4.     Plaintiff Kenneth R. Hansen is an individual resident and citizen of the State of California, and is trustee for the Hansen Family Trust, the fee owner of a parcel of land located in Butte County, California, assessor parcel number 040-200-066-000, with the legal description set forth in Exhibit 4 hereto.

5.     Plaintiffs Connie Sanchez and David Sanchez are individual residents and citizens of the State of California, and are trustees for the Sanchez Family Trust 11-11-11, the fee owner of a parcel of land located in Contra Costa County, California, assessor parcel number 068131036, with the legal description set forth in Exhibit 5 hereto.

6.     Ravinder S. Thiara and Sureena Thiara are individual residents and citizens of the State of California, and are fee owners of a parcel of land located in Sutter County, California, assessor parcel number 09200002, with the legal description set forth in Exhibit 6 hereto.

7.     Plaintiff Mary Cruz is an individual resident and citizen of the State of

11492132.1

California, and is fee owner of a parcel of land located in San Joaquin County, California, assessor parcel number 198050250, with the legal description set forth in Exhibit 7 hereto.

8.    Defendant Union Pacific Railroad Company ("Union Pacific"), successor to Southern Pacific Transportation Company, is a Delaware Corporation with its principal place of business in Omaha, Nebraska.

9.    Defendant SFPP, L.P. ("SFPP"), formerly known as Santa Fe Pacific Pipelines, Inc., is a limited partnership.  Upon information and belief, the partners of SFPP are citizens of the States of Texas and/or Delaware.

10.    Defendant Kinder Morgan Operating, L.P. "D" ("Kinder Morgan D") is a limited partnership.  Upon information and belief, the partners of Kinder Morgan D are citizens of the States of Texas and/or Delaware.

11.    Defendant Kinder Morgan G.P., Inc. ("Kinder Morgan GP"), is a corporation. Kinder Morgan GP is incorporated in the State of Delaware and maintains its principal place of business in the State of Texas.

12.    Defendants SFPP, Kinder Morgan D, and Kinder Morgan GP are collectively referred to herein as "the Pipeline Companies."

## JURISDICTION AND VENUE

13.    Jurisdiction is proper pursuant to 28 U.S.C. § 1331, in that this matter presents a federal question involving the interpretation of certain acts of Congress, including the Railroad Act of 1862, Ch. 120, § 3, 12 Stat. 489; the Act of July 2, 1864, Ch. 216, §§ 1-22, 13 Stat. 356; the Act of 1866, 30 U.S.C. § 21; and the General Right-of-Way Act of 1875, 18 Stat. 482, 43 U.S.C. § 934 *et seq.*

14.    Additionally or alternatively, jurisdiction is proper pursuant to 28 U.S.C. § 1332(a), because this dispute is between citizens of different states, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

15.    Additionally or alternatively, jurisdiction is proper pursuant to 28 U.S.C. § 1332(d), in that this is a class action in which the amount in controversy exceeds the

1  sum of $5,000,000, exclusive of interest and costs, and at least one member of the

2  proposed class is a citizen of a state different from at least one defendant.

3       16.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because a

4  substantial part of the events giving rise to this dispute occurred in this District.

5       17.    Additionally or alternatively, venue is proper in this District pursuant to 28

6  U.S.C. § 1391(b)(1), because Defendants do business in the State of California and in

7  this District and are subject to personal jurisdiction in the State of California.  Defendants

8  therefore reside in this District for venue purposes pursuant to 28 U.S.C. § 1391(c)(2).

9       18.    The real property which forms the subject matter of this action is located in

10  the State of California.

11       19.    The conduct complained of herein occurred, in whole or in part, within the

12  State of California and/or was directed at residents and citizens of the State of California.

13                      **INTRADISTRICT ASSIGNMENT**

14       20.    This action should be assigned to the Southern Division of this Court

15  because one or more of the defendants may be found here, and a substantial portion of

16  the events giving rise to this action occurred in Orange County.

17                      **FACTUAL ALLEGATIONS**

18       21.    With the onset of the Civil War, the need for a transcontinental railroad took

19  on particular urgency and, starting in 1862, the government lavished sweeping land

20  grants on the railroads in order to build several transcontinental railroads across the

21  nation.

22       22.    The initial Congressional land act was in 1862, (Railroad Act of 1862, Ch.

23  120, § 3, 12 Stat. 489) and subsequent Congressional land acts were passed in 1864

24  (Act of July 2, 1864, Ch. 216, §§ 1-22, 13 Stat. 356), in 1866 (30 U.S.C. § 21), and in

25  1875 (General Right-of-Way Act of 1875, 18 Stat. 482, 43 U.S.C. § 934 et seq.).

26       23.    Defendant Union Pacific currently operates a railroad transportation system

27  in 23 states west of the Mississippi river totaling roughly 32,400 miles, including within the

28  State of California.

24.     Approximately half of the Defendant Union Pacific's tracks in the western part of the United States, including within California, were obtained by and through one of the Congressional land grants.

25.     The United States government owned the subsurface of the railroad right-of-way at the time of the Congressional acts conveying railroad rights of way through the public lands.

26.     The Congressional acts merely granted the railroad a surface easement for its railroad purposes only, and expressly reserved and did not convey rights to the subsurface real property that is below the railroad's right-of-way.

27.     With respect to Congressional acts that pre-date 1871, the railroads were granted a surface right-of-way, and the right to extract from the subsurface only such minerals as were necessary for the construction and operation of the railroad.  Under the pre-1871 Acts, when the land granted ceased to be used for railroad purposes, it was subject to reversion.  Under the pre-1871 Acts, the railroads were prohibited from using the subsurface beneath their rights-of-way for commercial gain.

28.     With respect to the 1875 Congressional Act, the railroads were granted only a surface easement, and the right to use the subsurface only as necessary to support the surface operation of the railroad.

29.     The railroads' use and occupation of the surface created no right of possession in the subsurface.

30.     Additionally, the railroad acquired portions of its easement by private grants that limited its use for railroad purposes only.

31.     Plaintiffs are successors in title to what were once public lands through which the railroad rights-of-way now pass, or, alternatively, are fee owners of property that is burdened by a surface easement for railroad purposes only.

32.     In the 1950's, Union Pacific's predecessor began constructing oil and gas pipelines to run below ground, beneath the railroad's right-of-way in these Western states, including within the State of California.

33.     The Pipeline Companies operate a pipeline system through the Western and Southwestern United States that is more than 3,000 miles in length, including approximately 1,100 miles within the State of California.  The system distributes refined petroleum products (principally diesel, all grades of gasoline, and jet fuel).

34.     More than half the length of the pipeline is located beneath the railroad's surface easement, unlawfully utilizing the subsurface rights of the actual fee owners.

35.     In the mid-1950's, when construction of the pipeline began, Union Pacific's predecessor and the predecessor of the Pipeline Companies were sister subsidiaries of Southern Pacific Corporation.

36.     The railroad claimed for itself or purported to grant the right to construct an underground pipeline within the subsurface underlying the railroad's right-of-way.

37.     Pipelines were built underneath the railroad's rights-of-way irrespective of what ownership interest the railroad had actually acquired in this subsurface real property pursuant to pre-1871 Acts of Congress or the 1875 Act, and irrespective of the fact that the railroad only acquired a surface easement for its railroad purposes and has and had no legal rights whatsoever to occupy the subsurface or to grant subsurface easements for purposes of constructing or operating the pipeline.

38.     In or about 1983, the railroad and the predecessor of the Pipeline Companies entered into a ten-year lease agreement with respect to rents to be paid by the Pipeline Companies to the railroad for the operation of the pipeline within the subsurface of the railroad's right-of-way.

39.     In or about the late 1980's, the pipeline company was divested from the railroad, and the railroad and pipeline were no longer affiliated companies.

40.     In 1991, Union Pacific's predecessor sued the predecessor of the Pipeline Companies, alleging that the 1983 agreement should be rescinded because it was created while the companies were still sister entities and because it was not negotiated at arm's length, meaning that an artificially low rent amount was established for the pipeline easements.

11492132.1

41.     The 1991 lawsuit was settled in April of 1994 by virtue of a settlement agreement, which provided that the 1983 easement rental agreement was rescinded, the purported pipeline easement rights were confirmed, the parties compromised various existing claims, and the Pipeline Companies' predecessor paid over $5 million in return for the railroad's dismissal of claims and causes of action.

42.     In July of 1994, the railroad and the Pipeline Companies' predecessor entered into an amended and restated easement agreement ("AREA"), which purported to state that the railroad granted easements to the Pipeline Companies' predecessor for the transportation of its petroleum, natural gas, and other products, and reiterated a procedure and mechanism to determine the amount of rent that the Pipeline Companies' predecessor would pay the railroad for what purported to be perpetual easements in the subsurface of the right-of-way.

43.     The next stage of litigation between Union Pacific and the Pipeline Companies commenced in 2004.  In April of 2012, after more than 250 trial days, a trial court in Los Angeles, California found that pursuant to the AREA, the base annual rent owed from the Pipeline Companies to Union Pacific commencing on January 1, 2004 was $14,080,487; that back rent due as of the time of the judgment was $81,589,584; and that prejudgment interest was payable by the Pipeline Companies to Union Pacific in the amount of $19,372,195.50.

44.     This judgment was appealed by the Pipeline Companies.  The California Court of Appeal for the Second District affirmed in part and reversed in part and remanded the decision of the trial court.

45.     The California Court of Appeal ruled that neither the 1875 Act nor the pre-1871 Congressional Acts provided Union Pacific with sufficient property interests to allow the railroad to collect rent for the Pipeline Companies' use of the subsurface beneath the railroad's right-of-way.

46.     The California Court of Appeal's ruling denotes that the fee owners of the right-of-way, these Plaintiffs and all putative Class Members, and not Union Pacific, had

the sole and exclusive right to grant easements to the Pipeline Companies for a pipeline below the railroad's right-of-way and to collect rents from such use and occupancy by the pipeline.

47.     Union Pacific's using or permitting the Pipeline Companies to use the limited railroad purpose right-of-way to carry petroleum through a subsurface pipe was an improper and illegal use outside the scope of Union Pacific's easement, which terminated Union Pacific's easement.

48.     The Pipeline Companies' use of the subsurface of the right-of-way to convey petroleum products may be severed from the surface railroad use and terminated.

49.     The purported easement agreements granted by Union Pacific to the Pipeline Companies were and are invalid, and the Defendants have been trespassing on Plaintiffs' fee ownership in the subsurface of the right-of-way for over 50 years without payment to all of the adjacent landowners who own the fee in the right-of-way.

50.     Defendants have been unjustly enriched for over 50 years by, in the railroad's case, collecting rent from the Pipeline Companies that it had no right to collect, and in the Pipeline Companies' case by developing a commanding share of the oil and gas market through the use and occupancy of the pipeline without the consent of the Plaintiffs and without compensation to them.

51.     Defendants' wrongful conduct is ongoing and continuing, and has caused and continues to this day to cause harm to Plaintiffs.

52.     Upon information and belief, as early as the 1950's, Union Pacific's predecessor-in-interest recognized that the railroad did not have sufficient legal title to purportedly grant an easement within the subsurface of the railroad right-of-way to construct and operate an oil and gas pipeline.

53.     Upon information and belief, employees, agents, or representatives of Union Pacific's predecessor-in-interest recommended that the company justly compensate the true fee owners of the subsurface, the Class Members, which Union

Pacific's predecessor-in-interest wrongfully failed and refused to do.

54. Upon information and belief, Union Pacific's predecessor knowingly engaged in a plan and scheme to unlawfully deprive the Class Members of their property rights by granting the right to construct an oil and gas line within the subsurface of the railroad's right-of-way in excess of the railroad's legal rights and without due notice or compensation to the Class Members for such use and occupancy.

55. Upon information and belief, the Pipeline Companies have recognized for decades that the railroad lacked sufficient title to convey easements to the pipeline in tracts of land that were granted to the railroad pursuant to Congressional Acts, but have knowingly and deliberately transmitted petroleum products through the Class Members' real property and withheld rents from the lawful owners of the subsurface that they wrongfully use and/or occupy.

56. Defendants are legally sophisticated entities that thoroughly researched, investigated, and assessed the nature of their purported legal rights and claim to the subsurface of the railroad's rights-of-way, and, upon information and belief, knew that they had no legal right to use, occupy, or profit from the subsurface real property that is owned by Plaintiffs.

57. Defendants, at all times relevant hereto, misrepresented and/or concealed from Plaintiffs the facts regarding the presence of the pipeline on Plaintiffs' real property and the nature of the Defendants' supposed legal rights to use, occupy, or profit from the subsurface of the railroad's rights-of-way.

58. Plaintiffs were wrongfully deterred from filing their causes of action against Defendants by virtue of the Defendants' wrongful conduct in concealing the true facts and wrongfully and dishonestly misleading Plaintiffs as to the nature of the Plaintiffs' rights, despite the Defendants' knowledge that they had no right to occupy the subsurface of Plaintiffs' real property.

59. The pipeline was constructed underground, in some cases tens of feet below the surface.

60.    The Defendants' use and occupancy of the subsurface of the railroad's rights-of-way was hidden or concealed from the Plaintiffs.

61.    Either the construction of the pipeline was not visible to the Class Members at the time it was constructed, or it was not visually apparent to the Class Members that the pipeline was for the purposes of conveying petroleum products for the commercial gain of the Defendants as opposed to being for the structural or drainage needs of the railroad attendant upon legitimate railroad operations.

62.    Before the date of the California Court of Appeal's decision, Plaintiffs did not discover, and did not know of, facts that would have caused a reasonable person to suspect, both that they had suffered harm and that such harm was caused by the Defendants' wrongful conduct.

63.    Before the date of the California Court of Appeal's decision, Plaintiffs were not entitled to begin and prosecute their claims herein.

## **CLASS ACTION ALLEGATIONS**

64.    The representative Plaintiffs bring this class action on behalf of themselves and a class of similarly situated persons under Rule 23(a) of the Federal Rules of Civil Procedure, and the Class is initially defined as all landowners who own land in fee adjacent to and underlying the railroad easement under which the pipeline is located within the State of California.

65.    The proposed Class is so numerous that joinder of all members is impracticable.  The proposed Class will be made up of those fee landowners who owned parcels adjacent to the railroad's right-of-way where Union Pacific owns a surface easement for its railroad purposes and where the pipeline runs within the adjacent landowners' fee ownership in the subsurface of the right-of-way.

66.    Prospective Class Members can be identified from the Defendants' own records and by a search of the records of the Tax Assessor and Recorder of Deeds in a county by county search in the State of California.  The putative class will consist of hundreds or thousands of parcels and owners along the right-of-way and pipeline,

1   including present and past owners who have sustained damages as a result of

2   Defendants' unlawful conduct.

3        67.     The claims of all of the named plaintiffs involve all of the same issues of law

4   and fact as the proposed Class Members and are therefore common to each putative

5   Class Member.  The questions of law and fact common to the Class predominate over

6   questions affecting only individual class members.  These questions include, but are not

7   limited to:

8        a.     Whether Union Pacific, in possession of merely a surface easement

9   pursuant to Congressional land grants, improperly and illegally purported to grant

10   subsurface easements for a pipeline without obtaining consent from Plaintiffs and without

11   payment to Plaintiffs.

12        b.     Whether Union Pacific improperly and illegally collected rents from the

13   Pipeline Companies for the right to transmit petroleum products through the Plaintiffs' real

14   property located in the subsurface beneath the railroad's surface right-of-way.

15        c.     Whether Union Pacific's activities, specifically using or permitting the

16   Pipeline Companies to use the limited railroad purpose right-of-way to carry petroleum

17   through a subsurface pipe, was an improper and illegal use outside the scope of Union

18   Pacific's easement which terminated Union Pacific's easement or whether such pipeline

19   activity may be severed from the railroad use and itself terminated.

20        d.     Whether the Pipeline Companies improperly and illegally occupied the

21   subsurface of Plaintiffs' real property and transmitted petroleum products through

22   Plaintiffs' real property.

23        e.     Whether the Class is entitled to declaratory relief.

24        f.     Whether the Class is entitled to damages for trespass.

25        g.     Whether the Class is entitled to quiet their title in the real property, free and

26   clear of any claim of right by the Defendants.

27        h.     Whether the Class is entitled to eject the Defendants from the Class

28   Members' real property.

i.      Whether the Class is entitled to restitution and disgorgement of benefits unjustly obtained and retained by the Defendants.

j.      Whether the Class is entitled to recover reasonable attorneys' fees, prejudgment interest, and the costs of suit.

68.      The claims of the named Plaintiffs are typical of the claims of the proposed Class.  The claims of the named Plaintiffs, as well as the claims of the proposed Class Members, arise from the same set of facts and are premised upon the same legal theories under federal law, namely the scope of Congressional land grants, and the various state property laws.  The named Plaintiffs and the proposed Class Members possess the same interests and they have suffered the same or similar injury — deprivation of their property rights.  Further, the named plaintiffs and the proposed Class Members seek the same remedy — compensation for damages for the diminution in value in their property rights and for recovery of benefits that have been unjustly obtained by Defendants from the Class Members.

69.      The Plaintiffs, as representative parties, will fairly and adequately protect the interests of the proposed Class.  Plaintiffs have engaged competent and experienced counsel who will properly protect and advance the interests of the Class.

70.      A Class Action is superior to any other available method for the fair and efficient adjudication of this controversy.  Plaintiffs and the members of the Class have suffered irreparable harm as a result of Defendants' unfair and unlawful conduct.  Because of the size of the individual Class Members' claims, few Class Members could afford to seek legal redress for the wrongs claimed herein.  Absent a class action, the Class Members will continue to suffer losses and the violations of law described herein will continue without remedy and Defendants will be permitted to retain the proceeds of their misdeeds.

71.      Further, the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which could establish incompatible standards of conduct

11492132.1

-12-

COMPLAINT

for Defendants or adjudication of individual claims would be dispositive of the claims of other Class Members not parties to this lawsuit and could substantially impair or impede their ability to protect their interests.

## FIRST CAUSE OF ACTION

### (DECLARATORY JUDGMENT)

72.     Plaintiffs reallege paragraphs 1-71.

73.     An actual dispute and controversy presently exists between Plaintiffs and Defendants concerning their respective rights and duties to real property situated in the subsurface beneath the railroad's right-of-way.

74.     Defendant Union Pacific contends that it holds sufficient legal right and title to purportedly grant easements to third parties, including the Pipeline Companies, to occupy the subsurface of the right-of-way, and to collect rents from such occupancy.

75.     The Pipeline Companies occupy the subsurface of the right-of-way, and derive a commercial benefit from said occupancy, without the consent of Plaintiffs and without payment of rents to Plaintiffs.

76.     A judicial determination of the rights and responsibilities of the parties over the real property in question is necessary and appropriate at this time.

WHEREFORE, pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, Plaintiffs request that the Court enter judgment declaring that (1) Defendant Union Pacific lacks sufficient legal right or title in the subsurface of its right-of-way to grant easements or to collect rents associated with the occupancy of the subsurface, and (2) Defendant Pipeline Companies lack sufficient legal right or title to occupy the subsurface of the railroad's right-of-way.

## SECOND CAUSE OF ACTION

### (TRESPASS)

77.     Plaintiffs reallege paragraphs 1-76.

78.     Union Pacific, by and through various Congressional land acts, acquired a surface easement and right-of-way solely for its railroad purposes.

11492132.1

-13-
COMPLAINT

79.    Union Pacific did not, by virtue of the Congressional land acts, acquire a fee interest in the subsurface below its surface right-of-way.

80.    Although Union Pacific acquired solely a surface easement for its railroad purposes only, Union Pacific purported to grant easements to the Pipeline Companies for the construction of the pipeline in the subsurface of Union Pacific's right-of-way.

81.    Union Pacific's intentional invasion of Plaintiffs' interest in the exclusive possession of their subsurface rights in their property is an intentional act of trespass.

82.    Union Pacific's continuing claim to possess the authority to grant easements in the subsurface underlying its right-of-way, to the Pipeline Companies and to others, is an ongoing invasion of Plaintiffs' fee ownership of the land without authority or permission and amounts to a continuing trespass on Plaintiffs' fee ownership in their land.

83.    The Pipeline Companies constructed, operated, and still transport petroleum products through their pipeline beneath the subsurface of Union Pacific's right-of-way, which is actually owned by Plaintiffs.

84.    Since Union Pacific did not own or acquire Plaintiffs' fee ownership interest in the right-of-way, including Plaintiffs' ownership in the subsurface of the right-of-way, and since Union Pacific had no authority to violate Plaintiffs' fee ownership by purportedly granting easements to the Pipeline Companies, the Pipeline Companies' transmission of petroleum products through their pipeline is an intended invasion of Plaintiffs' fee ownership interest in the exclusive possession of their property.

85.    The Pipeline Companies' intentional invasion of Plaintiffs' interest in the exclusive possession of their subsurface rights in their property is an intentional act of trespass.

86.    The Pipeline Companies' transmission of petroleum products through the pipeline is an ongoing invasion of Plaintiffs' fee ownership of the land without authority or permission and amounts to a continuing trespass on Plaintiffs' fee ownership in their land.

87.     Defendants' trespass is continuing and could be abated.

88.     Additionally or alternatively, Defendants' trespass is permanent, and has resulted in diminution of the value of the Plaintiffs' real property.

89.     Due to the Defendants' trespass, Plaintiffs have suffered damages, including the invasion of their exclusive rights to possess and occupy their subsurface property.

90.     Defendants' trespass is and was malicious, wanton, oppressive, and/or fraudulent in nature.

WHEREFORE, Plaintiffs pray for an award of damages resulting from Defendants' trespass since the 1950's and for continuing trespass, for the diminution in value of their property, for recovery of exemplary damages, and for attorneys' fees and the costs of this action.

### THIRD CAUSE OF ACTION

### (EJECTMENT)

91.     Plaintiffs reallege paragraphs 1-90.

92.     This is an action to recover possession of real property located in the State of California.

93.     Plaintiffs are the fee title holders of Union Pacific's railroad right-of-way, including the subsurface of the right-of-way.  Plaintiffs' fee ownership is burdened only by a limited easement for the use of the surface for railroad purposes only.

94.     Union Pacific's using or permitting the Pipeline Companies to use the limited railroad purpose right-of-way to carry petroleum through a subsurface pipe was an improper and illegal use outside the scope of Union Pacific's easement, which terminated Union Pacific's easement.

95.     The Pipeline Companies' use of the subsurface of the right-of-way to convey petroleum products may be severed from the railroad use and terminated.

96.     As the fee title holders of the subsurface, Plaintiffs have the exclusive right to possession of the subsurface of the right-of-way.

97.     Defendants have unlawfully occupied and are in possession of the subsurface beneath the railroad's right-of-way, without the consent of the Plaintiffs.

98.     Defendants have failed and refused to cease their occupation of Plaintiffs' property.

99.     Plaintiffs have sustained damages as a direct and proximate result of Defendants' wrongful occupation of the subsurface of the railroad's right-of-way.

WHEREFORE, Plaintiffs demand judgment for possession of the property and that they be awarded the rents, profits, the reasonable cost of repair or restoration of the property to its original condition, the costs of this action, and other damages which arise from the Defendants' unlawful possession of the property.

## FOURTH CAUSE OF ACTION

### (QUIET TITLE)

100.    Plaintiffs reallege paragraphs 1-99.

101.    Plaintiffs are the fee title holders of Union Pacific's railroad right-of-way, including the subsurface of the right-of-way.  Plaintiffs' fee ownership is burdened only by a limited easement for the use of the surface for railroad purposes only.

102.    As the fee title holders of the subsurface, Plaintiffs have the exclusive right to possession of the subsurface of the right-of-way.

103.    Defendants have unlawfully occupied and are in possession of the subsurface beneath the railroad's right-of-way, without the consent of the Plaintiffs.

104.    Defendants have asserted purported legal claim and title to occupy, use, and possess the subsurface of the right-of-way.

105.    Defendant Union Pacific has asserted purported legal claim and title to grant easements in the subsurface of the right-of-way and to charge and collect rents from third parties, including the Pipeline Companies, for occupation, use, and possession of the subsurface of the right-of-way.

106.    Defendant Pipeline Companies have asserted purported legal claim and right to use the subsurface to transmit petroleum products through an unlawfully-

1    constructed and maintained pipeline located within Plaintiffs' property.

2       107.    Defendants' claimed rights in the subsurface of the right-of-way are adverse

3    to those of Plaintiffs, and threaten Plaintiffs' quiet use and enjoyment of their fee interest

4    in their real property.

5       108.    The claims of Defendants, and each of them, are without merit and

6    Defendants have no right, title, or interest whatsoever in the above-described real

7    property or any part thereof.

8       WHEREFORE, Plaintiffs demand judgment quieting title in the aforementioned

9    subsurface real property solely in their respective names, free and clear of any claimed

10   interest by Defendants, and each of them.

11                          **FIFTH CAUSE OF ACTION**

12                              **(UNJUST ENRICHMENT)**

13      109.    Plaintiffs reallege paragraphs 1-108.

14      110.    Plaintiffs are the fee title holders of Union Pacific's railroad right-of-way.

15      111.    Plaintiffs' fee ownership of the right-of-way includes the subsurface and

16   aerial rights of the right-of-way, and Plaintiffs' land is now burdened with a surface

17   railroad easement for railroad purposes only.

18      112.    Union Pacific negotiated with the Pipeline Companies for rent payments by

19   the Pipeline Companies for the use of the subsurface

20      113.    Union Pacific realized monetary benefits and rent payments from the

21   Pipeline Companies for those subsurface rights, without payment to the Plaintiffs.

22      114.    Union Pacific was aware that it received the benefit of the use of Plaintiffs'

23   subsurface property rights without compensating Plaintiffs.

24      115.    Union Pacific does not own any title and does not have permission to use

25   the subsurface or aerial rights above and below the right-of-way on the surface, but has

26   received substantial monetary compensation and benefit without any the Pipeline

27   Companies to the Plaintiffs, such that the retention of payments by Union Pacific made

28   by SFPP is unfair, unjust, and inequitable.

116.   Since Union Pacific has realized enormous monetary benefit for the improper use of Plaintiffs' subsurface rights in their property, Union Pacific has been unfairly and unjustly enriched and owes restitution to the Plaintiffs for the use and rent collected by Union Pacific for illegal and unauthorized subsurface easements they granted to the Pipeline Companies.

117.   Plaintiffs are entitled to damages for the value of all rents and monetary benefits received by Union Pacific for all improper and illegal easements granted to the Pipeline Companies since the 1950's.

118.   The Pipeline Companies, as successors to the original corporate affiliate of Union Pacific's predecessor, constructed a pipeline within Plaintiffs' property without notice to Plaintiffs, and without negotiating or paying for the right to use the subsurface of the right-of-way.

119.   Upon information and belief, the Pipeline Companies' predecessor-in-interest would have faced substantial additional cost and delay if it had fairly negotiated with and compensated the owners of the property at issue at the time the pipeline was constructed, and unjustly, unfairly, and inequitably received the benefit of the use of the property.

120.   The Pipeline Companies, as corporate affiliates of the railroad, occupied the subsurface of the railroad's right-of-way for decades by payment of rents that were less than the fair market value that would have been charged in an arms-length transaction.

121.   By virtue of the wrongful acts herein described, the Pipeline Companies established a considerable market share and dominance of the oil and gas market, with more than 50% of their pipeline in the Western and Southwestern United States passing within Union Pacific's right-of-way.

122.   The Pipeline Companies realized enormous cost savings and profits derived from operating the pipeline through this territory without payment of just compensation to the property owners, the Plaintiffs.

123.   The Pipeline Companies have enjoyed an unjust and unfair competitive

11492132.1

advantage over other pipeline companies who properly paid for and secured the right to build their pipelines.

124. The Pipeline Companies are aware of the benefits they have received from and at the expense of the Plaintiffs.

125. Since the Pipeline Companies have realized enormous monetary benefit for the improper use of Plaintiffs' subsurface rights in their property, the Pipeline Companies have been unfairly and unjustly enriched and owe restitution to the Plaintiffs for the use and rent of Plaintiffs' real property.

126. Plaintiffs are entitled to damages for the value of all monetary benefits received by the Pipeline Companies for their improper and illegal occupation and use of the subsurface of the rights-of-way since the 1950's.

127. Plaintiffs lack an adequate remedy at law.

128. Defendants' conduct is and was malicious, wanton, oppressive, and/or fraudulent in nature.

WHEREFORE, Plaintiffs demand recovery of benefits that were unjustly obtained and retained by Defendants, for a constructive trust in favor of Plaintiffs to be placed upon the benefits and proceeds received by Defendants as a result of their violation of the Plaintiffs' rights, for recovery of exemplary damages, for Plaintiffs' costs and fees, and for any other and further relief as the Court may deem just and proper.

## SIXTH CAUSE OF ACTION

### (VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17200, et seq.)

129. Plaintiffs reallege paragraphs 1-128.

130. The acts and practices of Defendants as alleged herein constitute unlawful business acts and practices within the meaning of Cal. Bus. & Prof. Code §§17200, et seq.

131. Defendants have engaged in "unfair" and/or "unlawful" business acts and practices as described above by, without limitation, depriving Plaintiffs of their legal rights in and to the subsurface real property and withholding rents from the Plaintiffs who are

the lawful owners of that property.  Defendants' unfair and unlawful business acts and practices, as described herein, constitute trespass and unjust enrichment, among other things.

132.   The above-described unlawful and unfair business acts and practices continue to this day.  Defendants have received unlawful benefits from Plaintiffs and have failed to provide full restitution and disgorgement of all ill- gotten monies either acquired or retained by Defendants as a result thereof, as appropriate under California law.

WHEREFORE, Plaintiffs pray for the restitution of benefits and profits that were unfairly and/or unlawfully obtained by the Defendants, in an amount to be determined by a jury, and, further, an order enjoining Defendants from such unlawful and unfair conduct in the future pursuant to Cal. Bus. & Prof. Code § 17203.

## SEVENTH CAUSE OF ACTION

### (ACCOUNTING)

133.   Plaintiffs reallege paragraphs 1-132.

134.   As set forth above, Defendants have received unlawful benefits from Plaintiffs.

135.   Plaintiffs are entitled to an accounting from Defendants of these benefits and profits.

136.   As occupants of the dominant estates, Defendants occupy a special legal relationship to Plaintiffs, owners of the servient estates.

137.   As the occupants of the dominant estates, Defendants owe Plaintiffs, owners of the servient estates, a duty to account for benefits that Defendants have obtained from the servient estates.

138.   Defendants have wrongfully obtained benefits from the unlawful use of Plaintiffs' property for nearly six decades.

139.   Defendants were initially affiliated companies, and the negotiated rent payments were not the result of arms-length transactions between and amongst them.

140.   Defendants have been enriched by the collection of rents, in the railroad's

1  case, and by the pipeline companies' developing a commanding share of the oil and gas

2  market through the use and occupancy of the pipeline.

3      141.   By virtue of their misconduct, Defendants avoided the costs and obligations

4  of legally acquiring the rights to the use of the subject properties.

5      142.   Defendants concealed their conduct (including their profits) from Plaintiffs.

6      143.   The benefits wrongfully obtained by Defendants from Plaintiffs are such that

7  it would be difficult to ascertain the Plaintiffs' damages through ordinary means.

8      144.   Plaintiffs lack an adequate remedy at law.

9      WHEREFORE, Plaintiffs pray for an accounting by Defendants of benefits and

10  profits that were unfairly and/or unlawfully obtained from Plaintiffs by the Defendants.

11                    **DEMAND FOR TRIAL BY JURY**

12      Plaintiffs demand a trial by jury with respect to all claims so triable.

13                        **PRAYER FOR RELIEF**

14      WHEREFORE, Plaintiffs, individually and on behalf of all other similarly situated,

15  and on behalf of the general public, pray for judgment against Defendants as follows:

16      A.    For an order certifying this class as a Class Action and appointing Plaintiffs

17  and Plaintiffs' counsel to represent the Class;

18      B.    For a declaration that (1) Defendant Union Pacific lacks sufficient legal right

19  or title in the subsurface of its right-of-way to grant easements or to collect rents

20  associated with the occupancy of the subsurface, and (2) Defendant Pipeline Companies

21  lack sufficient legal right or title to occupy the subsurface of the railroad's right-of-way;

22      C.    For damages, restitution, and/or disgorgement of benefits and/or profits

23  according to proof;

24      D.    For exemplary damages based on the Second Cause of Action for

25  Trespass and the Fifth Cause of Action for Unjust Enrichment;

26      E.    For possession of the subsurface real property;

27      F.    For an order quieting title in the subsurface real property in Plaintiffs'

28  respective names, free and clear of any claimed interest by the Defendants;

1      G.     For a constructive trust in favor of Plaintiffs to be placed upon the benefits

2  and proceeds received by the Defendants;

3      H.     For an accounting by Defendants of all benefits and profits that were

4  unfairly and/or unlawfully obtained from Plaintiffs by the Defendants;

5      I.     For reasonable attorneys' fees;

6      J.     For pre-judgment interest;

7      K.     For costs of suit; and

8      L.     For an order providing such other and further relief as this Court deems just

9  and proper.

10

11  DATED: August 26, 2015          HANSON BRIDGETT LLP

12

13                           By:     /s/ John T. Cu

14                             ANDREW G. GIACOMINI
JOHN T. CU

15                           Attorneys for Plaintiffs Lidia Rivera, et al.

16

17                           BAKER STERCHI COWDEN & RICE, L.L.C.
JOHN W. COWDEN (*admitted pro hac vice*)
ANGELA M. HIGGINS (*pro hac vice application*

18                           *forthcoming*)
2400 Pershing Road, Suite 500

19                           Kansas City, MO  64108
Telephone:  (816) 471-2121

20                           Facsimile:  (816) 472-0288

21                           BAKER STERCHI COWDEN & RICE, L.L.C.
J. ROBERT SEARS (*pro hac vice application*

22                           *forthcoming*)
CAROLINE M. TINSLEY (*admitted pro hac vice*)

23                           1010 Market Street, Suite 950
St. Louis, MO  63101

24                           Telephone:  (314) 231-2925
Facsimile:  (314) 231-4857

25

26  4820-7264-5415, v.  1

27

28

-22-
COMPLAINT